UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN FOREMAN AND GARY RUNGE, ) | |
| ) | Case No. 3:11-cv-01124 |
| Plaintiffs, ) | Judge Aleta A. Trauger |
| ) | |
| v. ) | |
| ) | |
| FIVE STAR FOOD SERVICE, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

On June 24, 2013, the court denied defendant Five Star's Motion for Summary Judgment and granted plaintiff John Foreman's Motion for Partial Summary Judgment. (Docket No. 46.) Five Star has filed a partial Motion to Reconsider (Docket No. 49), to which the plaintiffs filed a combined Response in opposition and Motion to Strike (Docket No. 66), and Five Star filed a combined Reply and opposition to the plaintiffs' Motion to Strike (Docket No. 74). The National Automatic Merchandising Association ("NAMA") also filed an *amicus curiae* brief in support of Five Star's Motion to Reconsider. (Docket No. 67.)[1]

## BACKGROUND[2]

During the time frame relevant to this lawsuit, John Foreman and Gary Runge worked for Five Star as vending route drivers and as so-called Avanti Market Merchandisers ("merchandisers"). Foreman and Runge claim that Five Star owes them unpaid compensation

---

[1]NAMA's brief was inadvertently docketed as a pending motion. The clerk will be directed to close that entry.

[2]The court's previous opinion concerning the cross-motions for summary judgment explains the factual background of this case in more detail. (*See generally* Docket No. 46.)

1

under § 216(b) of the Fair Labor Standards Act ("FLSA") for their work as vending route drivers and as merchandisers. Foreman also claims that, in violation of Tennessee law, Five Star terminated him in retaliation for intending to comply with a lawful trial subpoena.

Five Star filed a Motion for Summary Judgment on all claims. (Docket No. 30.) Foreman filed a Motion for Partial Summary Judgment on his FLSA claim. (Docket No. 49.) With respect to the FLSA claim, the parties disputed whether Foreman worked in a position subject to the "Motor Carrier Act" exemption from the FLSA's overtime requirements. *See* 29 U.S.C. § 213(b)(1). The court granted Foreman's motion and denied Five Star's motion, holding that: (1) Five Star was liable to Foreman for unpaid overtime because the MCA exemption did not apply, (2) disputed issues of fact remained concerning damages as to Foreman's FLSA claim, and (3) Foreman's factually distinct retaliation claim would proceed to trial. The court did not grant judgment to plaintiff Runge, who had not joined Foreman's motion. Therefore, following the court's order, several issues remained for trial.

Five Star has moved the court to reconsider its interlocutory order and to grant judgment to Five Star with respect to the plaintiffs' FLSA claims.[3] Although Five Star argues that reconsideration is appropriate based on the existing record, Five Star has also introduced four affidavits containing new factual information, which it contends demonstrate that the MCA exemption applies here. In response, the plaintiffs oppose the substance of Five Star's arguments related to the factual record previously relied upon by the court. With respect to the additional evidence introduced by Five Star in support of its Motion to Reconsider, the plaintiffs

---

[3]Because Five Star has not challenged the court's holding denying summary judgment with respect to Foreman's factually distinct retaliation claim, the court construes Five Star as requesting only partial reconsideration.

2

request that the court strike (and therefore not consider) the new factual information in resolving the Motion for Reconsideration. In the alternative, the plaintiffs request the opportunity to conduct discovery concerning the new factual information. The plaintiffs' brief does not address how the new information, if considered by the court, should impact the court's analysis.

## RULE 54 STANDARD

While the Federal Rules of Civil Procedure fail to explicitly address motions to reconsider interlocutory orders, "[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)); *see also In re Life Investors Ins. Co. of Am.*, 589 F.3d 319, 326 n.6 (6th Cir. 2009) ("[A] district court may always reconsider and revise its interlocutory orders while it retains jurisdiction over the case.") (citing *Rodriguez*, 89 F. App'x at 959 and *Mallory*, 922 F.2d at 1282). Thus, district courts may "afford such relief from interlocutory orders as justice requires." *Rodriguez*, 89 F. App'x at 959 (internal quotation marks and brackets omitted). Courts traditionally will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct clear error or prevent manifest injustice. *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (citing *Rodriguez*, 89 F. App'x at 959). This standard "vests significant discretion in district courts." *Rodriguez*, 89 F. App'x at 959 n.7.

## ANALYSIS

As an initial matter, the court finds that it made a clear error of law in applying the

3

standards applicable to cross-motions for summary judgment. "On cross-motions for summary judgment, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Dixon v. Univ. of Toledo*, 702 F.3d 269, 273 (6th Cir. 2012) (internal quotation marks and brackets omitted). Here, in ruling on the parties' cross-motions for summary judgment, the court drew all reasonable inferences in favor of the plaintiffs when ruling on Five Star's Motion for Summary Judgment, but did not similarly construe the facts in the light most favorable to Five Star when ruling on Foreman's Motion for Partial Summary Judgment. The court's failure to reverse the inferences constituted clear error, thereby justifying reconsideration. At a minimum, the court should have found that there was a genuine dispute of material fact concerning the applicability of the MCA exemption. Thus, the court should not have granted summary judgment to Foreman on the FLSA claim.

The remaining issue is whether the court should have (or now should) grant judgment in favor of Five Star on the plaintiffs' FLSA claims. Five Star argues that it is entitled to judgment because (1) the court erred by applying the Sixth Circuit standard set forth in *Baird v. Wagoner Transp. Co.*, 425 F.2d 407, 410 (6th Cir. 1970), rather than the "practical continuity of movement" standard set forth in *Walling v. Jacksonville Paper*, 317 U.S. 564, 63 S. Ct. 332, 87 L. Ed. 460 (1943), and subsequent cases; (2) under either standard, the previous record warranted judgment in favor of Five Star; and/or (3) in light of the supplemented factual record, summary judgment in favor of Five Star is warranted.

The four affidavits relied upon by Five Star introduce a substantial volume of additional factual information. (*See* Docket No. 51, Decl. of Mark Stephanos (Vice President and General

4

Manager of Nashville Division of Five Star); Docket No. 52, Decl. of Tom Nelson (President of Vistar of Tennessee); Docket No. 53, Decl. of Van Jarrett (Regional Cold Drink Manager for The American Bottling Company, a subsidiary of the Dr. Pepper Snapple Group); Docket No. 58, Ex. 1, Decl. of Rick Colloredo (Key Account Manager for Pepsi Beverages Company).) Taken collectively, the affidavits provide a much more detailed description than was previously presented to the court concerning Five Star's business relationships with Vistar of Tennessee ("Vistar") and specific outside vendors, including the means by which Five Star procures products (either directly or indirectly) from outside of Tennessee destined for Five Star's vending machines and "Avanti Markets."

For example, in his declaration, Stephanos states that (1) Five Star received some products directly from out-of-state vendors (*see, e.g.*, Stephanos Decl. ¶¶ 12-13 (coffee from Wisconsin, potato chips from Louisiana and California)), (2) Vistar was essentially a pass-through entity for specific orders from Five Star for certain "baked to order" foods and other specialized goods produced outside of Tennessee (*see, e.g., id.* ¶¶ 14-18 (pastries shipped from Chicago and Kentucky) and 19 (disposable coffee cups shipped from South Carolina)), and (3) Vistar at times shipped products from its out-of-state facilities directly to Five Star's Nashville branch (*id.* ¶ 22). Stephanos and Colloredo also state that the Pepsi Bottling Company ("PBC") shipped beverage products directly from out-of-state bottling facilities to Five Star's Nashville facility (via a PBC distribution center in Nashville) to fill specific orders from Five Star. (*See id.* ¶¶ 23-24 and Colloredo Decl. ¶¶ 5-6.) Stephanos also states that, after placing bottles for certain beverages in vending machines and micro-markets, the vending route drivers and merchandisers were required to return the empty crates and trays to Five Star's Nashville facility, from which

5

they were returned to bottling facilities outside of Tennessee. (Stephanos Decl. ¶ 25.)[4]

If true, the information contained in the affidavits provides seemingly compelling evidence that, regardless of whether the court strictly applies the *Baird* factors or the *Jacksonville Paper* factors, Five Star was engaged in interstate commerce for purposes of the MCA exemption to the FLSA. Five Star has also stated that, even if the court does not reconsider its position relative to Foreman, Five Star would present the additional evidence at trial relative to Runge, who did not join in Foreman's Partial Motion for Summary Judgment. As Five Star points out, this creates the likelihood that the court would issue a verdict at the close of the evidence (or that a jury would render a verdict for Five Star) that contradicts the court's findings relative to Foreman.

NAMA has also argued, *inter alia*, that refusing to apply the MCA exemption in this case would have adverse policy consequences because it would "create uncertainty where none

---

[4]In his declaration, Jarrett states that, to fill specific orders from Five Star, his bottling company bottled certain beverage products outside of Tennessee, shipped the bottles to its Nashville warehouse, and shipped those bottles from its Nashville warehouse to Five Star's Nashville warehouse, with the intention and understanding that the bottling company's products would "be in continuous movement in transportation until the product reaches its final destination in Five Star's vending machines and micro-markets." (Jarrett Decl. ¶¶ 5-8.) In Nelson's affidavit, Nelson provides a more robust description of the relationship between Five Star and Vistar than did his previous declaration. Nelson explains, *inter alia*, that Vistar utilizes targeted forecasting to estimate its customers' needs, that Vistar turns over its inventory within 27 to 28 days on average, that Vistar permits Five Star to place orders for specific quantities of specific goods, and that Vistar distributes certain products specific to Five Star (*i.e.*, products that Vistar did not otherwise distribute to its customers). (Nelson Decl. ¶¶ 6-9 and 13.) The Nelson Declaration also provides clear representations concerning Vistar's intent in distributing goods to Five Star. (*See, e.g.*, *id.* ¶¶ 14 ("In all cases, Vistar distributes products manufactured and packaged outside of Tennessee to Five Star with the understanding, agreement, and intent that Five Star Food Service, Inc. will place the products for sale in Five Star's vending machines and/or micro-markets.") and 15 ("It is the intention of Vistar that the final destination each order distributed to Five Star will be the final point of sale, meaning Five Star's vending machines and/or micro-markets.").)

6

existed in the food and refreshment vending, coffee service and food service management industries." (Docket No. 67 at p. 10.) The plaintiffs have not addressed NAMA's arguments, which support Five Star's position that "manifest injustice" to Five Star and to the vending industry generally could result if the court's previous ruling, premised on a limited record, is not vacated.

In the interest of fairness and judicial economy, and in the interest of sparing the parties unnecessary time and expense, the court is loath to have a trial that would result in a directed verdict for Five Star on the FLSA claims based on potentially undisputed facts. At the same time, in the interest of fairness to the plaintiffs, the court will not consider the additional evidence presented by Five Star without providing the plaintiffs an opportunity to test that new evidence through discovery. (*See* Docket No. 74 at p. 4; Docket No. 66 at p. 5.) Therefore, the court will vacate its previous order with respect to the FLSA claims, the court will reopen discovery for 90 days to allow the plaintiffs to test the new information presented by Five Star, and the court will order the parties to provide supplemental briefing concerning whether judgment for Five Star is warranted based on the supplemented record.[5] In briefing the

---

[5]In vacating its previous findings concerning Foreman's FLSA claim, the court is also vacating its discussion of the applicability of *Baird* and the *Jacksonville Paper* standard. Incidentally, in reviewing the record, the court notes that Foreman appears to have taken both sides of the issue as to whether the *Jacksonville Paper* "practical continuity of movement" standard governs here. (*Compare* Docket No. 42, Pltf. Resp. to Five Star's Mot. for S.J. (arguing that, under *Baird*, FLSA and MCA standards are different); *with* Docket No. 31, Attach. No. 1, Pltf. Mem. in Support of Pltf. Mot. for S.J., at pp. 7-8 (citing "totality of the circumstances" test and arguing that the MCA exemption applies to "transportation that 'is a practical continuity of movement from the manufacturers or suppliers without the state, through [the carrier's] warehouse and on to customers whose prior orders or contracts are being filled." [quoting] *Walling*, 317 U.S. at 569, 63 S. Ct. at 336).) Similarly, Foreman and Runge took seemingly inconsistent positions regarding which issues are arguably in dispute with regard to the MCA exemption. In support of Foreman's Motion for Summary Judgment, Foreman argued that Five

7

applicability of the MCA exemption based on the supplemented record, the parties may assume that the court is already aware of, and will consider, the parties' previous legal and factual submissions concerning the MCA exemption to the FLSA claim, including Five Star's arguments relating to the supplemented record as set forth in its Memorandum and Reply concerning the Motion to Reconsider.[6] Finally, the court notes that the parties have relied upon opinion letters, policy statements, and other public authorities, but did not file copies or provide electronic citations for some of those documents. (*See, e.g.*, Docket No. 30, Attach. No. 1, at p. 9 (referencing DOL Field Operations Handbook and DOL Opinion Letters)). To the extent that the parties have referenced and/or intend for the court to rely on these authorities in ruling on Five Star's Motion for Summary Judgment, they should file copies of those materials with their supplemental briefs.

Finally, to clarify, the court is reconsidering its previous findings only as to the FLSA claims. Therefore, regardless of the court's ultimate resolution of Five Star's Motion for

---

Star had failed to show *one* element of the MCA exemption (whether Five Star engaged in interstate commerce), whereas the plaintiffs' Response to Five Star's Motion for Summary Judgment purported to challenge additional elements of the MCA exemption. (*Compare* Docket No. 31, Attach. No. 1, at p. 6 ("For the purposes of summary judgment only, Plaintiff assumes Defendant meets the definition of 'motor private carrier.'"); *with* Docket No. 42 at pp. 8-9 (arguing that "Five Star's Nashville Branch does not meet the definition of a motor private carrier and that Foreman's role "did not affect[] safety of operation of Five Star's motor vehicles," as required by MCA).

[6]The plaintiffs argue that the Stephanos Declaration should be stricken to the extent it conflicts with Stephanos's deposition testimony. Because the court is reopening fact discovery, this argument is largely moot because the plaintiffs will have the opportunity to depose Stephanos concerning any new and/or purportedly inconsistent statements in his supplemental declaration. Regardless, having examined the record, it does not appear that the Stephanos Declaration contains statements that are facially inconsistent with the referenced excerpts from his deposition testimony, when that testimony is taken in context.

Summary Judgment relative to the plaintiffs' FLSA claims, Foreman's Tennessee retaliation claim will remain for trial.

## **CONCLUSION**

For the reasons stated herein, Five Star's Motion to Reconsider will be granted, Foreman's Motion to Strike will be denied, the court's previous order will be vacated in part and reversed in part as to the FLSA claims, the court will reopen discovery for the limited purposes stated herein, and the court will order the parties to file supplemental briefs premised on the supplemented factual record.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge